UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NICOLE STRAUSBURG, : Case No. 1:05-cv-0284

Plaintiff,

vs.

WARREN COUNTY BOARD OF COMMISSIONERS, et al.,

Defendants.

**ORDER**

Before the Court is Defendants' motion for summary judgment (Doc. 13). Plaintiff opposes the motion (Doc. 14), and Defendants have filed a reply brief (Doc. 15).

**BACKGROUND**

Plaintiff's complaint brought pursuant to 42 U.S.C. §1983 stems from a visit by local police officers to Plaintiff's apartment on May 17, 2004. Plaintiff shared the apartment with Jay Gordon, her then-boyfriend and the father of her two year old child, who also lived with the couple.

The following facts are largely undisputed. Officer Plummer, with the City of Waynesville police department, and Deputy Cresap, from the Warren County Sheriff's office, came to the apartment to execute an arrest warrant for Jay Gordon. The warrant had been issued by a local county court for Gordon's failure to appear on charges apparently unrelated to this case. The outside entry door to the apartment was on the lower level of

the building, and the living quarters were up a flight of stairs. Another door at the top of the stairs separated the stairs from the living quarters. The police officers came to the lower level entry door, knocked or rang a bell, and Mr. Gordon answered the door. Officer Plummer told Mr. Gordon that he was under arrest. As Mr. Gordon was dressed only in a pair of shorts, he said he needed shoes and a shirt before going to jail.

What happened after this point is disputed. Plaintiff alleges that Mr. Gordon called to her upstairs to get him his shirt and shoes. As she was trying to do so, Officer Plummer and Deputy Cresap walked Mr. Gordon up the stairs and came into the apartment living quarters through the door on the upper level. Gordon testified in the state court proceeding that the officers told him they were going to go upstairs almost as soon as he opened the lower level door. Officer Plummer immediately started searching the apartment over Plaintiff's objections, telling Plaintiff he was looking for drugs because he smelled marijuana smoke. Officer Plummer found a small painted box containing a large number of pills. Plaintiff said the pills had been left in the apartment by a friend, and that she did not know they were there. Officer Plummer then told Plaintiff that she needed to tell him "where the drugs are or we're taking your child to Children's Services and you're going to jail." (Plaintiff's Deposition at p. 88) Plaintiff called another friend of

Gordon's, a man named Chris, and asked him where Gordon kept his marijuana. Chris told her about a tray that Gordon kept in the bedroom closet under a box. Plaintiff found the tray and gave it to the police officer. The tray contained some loose marijuana and rolling papers. Officer Plummer left shortly thereafter, taking the drugs. Both Plaintiff and Gordon deny that any marijuana was smoked in the apartment the evening of the incident.

According to the officers' testimony at the state court suppression hearing and Officer Plummer's affidavit in this case, they smelled marijuana as soon as Gordon answered the lower level entry door. The officers escorted Gordon upstairs to get his shoes and shirt, and Deputy Cresap took Gordon back downstairs to wait in the cruiser. Officer Plummer then questioned Plaintiff about the marijuana smell, noting that a two-year-old child was in the apartment. Officer Plummer told Plaintiff that if he had to, he would secure the apartment and obtain a search warrant to remove the drugs. (Plummer Affidavit, ¶11.) He also told her that it was a "welfare issue for the child if the child is present while they're in there doing drugs." (Testimony of Plummer given in suppression hearing, at p. 8.) After a short conversation, Plaintiff told Officer Plummer that she did not want drugs in her home and gave her consent to remove any drugs in the apartment. Plaintiff then got the marijuana tray from the

bedroom closet, and the wooden box containing the pills, and gave them to Officer Plummer.

Gordon was charged in Ohio state court on felony drug possession charges, based on the 160 pills found in the painted box. (It is unclear if Gordon was also cited for marijuana possession, a minor misdemeanor based on the amount found in the apartment.) Gordon moved to suppress the evidence found during the search of the apartment. The trial judge granted Gordon's motion, finding that the State had not met its burden of proving that Plaintiff or Gordon had voluntarily consented to the warrantless search of their apartment.

Plaintiff was not arrested or charged with any crime as a result of the incident. Her child remains in her custody. Plaintiff freely admitted that neither officer raised his voice to her, that neither one touched her, that nothing in the apartment was damaged or broken, and that the entire incident lasted for approximately 30 to 45 minutes. Plaintiff also admitted that Gordon smoked marijuana in the apartment almost every day, and that she knew he must have had some in the apartment on May 17.

Plaintiff's complaint named the Warren County Commissioners, the City of Waynesville, Deputy Cresap, Officer Plummer and a John Doe police officer as Defendants. She alleged that the illegal search of her home, and the threat to remove her child if

she did not consent to a search, violated her constitutional rights. She brings claims under 42 U.S.C. §1983, as well as a claim for intentional infliction of emotional distress.

Plaintiff voluntarily dismissed all Defendants except for the City of Waynesville and Officer Plummer (Doc. 5). In her opposition to Defendants' motion for summary judgment, she admits that she lacks sufficient evidence to maintain a cause of action against the City of Waynesville. The Court therefore grants summary judgment to the City of Waynesville on all of Plaintiff's claims. Her remaining claims are pending solely against Officer Plummer.

**DISCUSSION**

1. Summary Judgment Standards.

The standards for summary judgment are well established. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (quoting First Nat'l Bank of Arizona v. Cities

Serv. Co., 391 U.S. 253 (1968)). The Court is not duty bound to search the entire record in an effort to establish a lack of material facts. Guarino v. Brookfield Township Trs., 980 F.2d 399, 404 (6th Cir. 1992); InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. den., Superior Roll Forming Co. v. InterRoyal Corp., 494 U.S. 1091 (1990). Rather, the burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court construes the evidence presented in the light most favorable to the non-movant and draws all justifiable inferences in the non-movant's favor. United States v. Diebold Inc., 369 U.S. 654, 655 (1962).

The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at

250. "If the evidence is merely colorable, . . . , or is not significantly probative, . . . , the court may grant judgment." Anderson, 477 U.S. at 249-50 (citations omitted).

Although summary judgment must be used with extreme caution since it operates to deny a litigant his day in court, Smith v. Hudson, 600 F.2d 60, 63 (6th Cir. 1979), cert. dismissed, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (citations omitted).

2. Plaintiff's Section 1983 Claims.

Plaintiff alleges two violations of constitutional magnitude: Defendant's threats to remove her child, and the warrantless search of her apartment which she claims was nonconsensual. Defendant argues that none of Plaintiff's constitutional rights were violated. He also argues that the search, even if nonconsensual, was justified by the exigent circumstances of exposure of a two-year old child to marijuana smoke.

It is clear that Defendant's threats to contact Children's Services, to call for a police dog, or to take Plaintiff to jail

in the event that drugs were found, are not violations of Plaintiff's constitutional rights. Several cases have held that far worse verbal threats, made in far more confrontational settings, do not violate a plaintiff's constitutional rights. See, e.g., Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (no violation where police officer told plaintiff he would "get him" and that plaintiff's friend was already dead, having committed suicide, which was not true and causing plaintiff to fear for his life). See also, Messer v. Rohrer, 1997 U.S. Dist. LEXIS 23753 (S.D. Ohio 1997) (no violation where officer screamed at plaintiff and repeatedly threatened to take her children and her house away). And see Ellis v. Ficano, 1995 U.S. App. LEXIS 38840, at *40-41 (6th Cir. 1995) (no violation when police officer threatened child's grandmother by saying "If you don't tell them where the drugs are, they're going to hurt you real bad.").

As to the warrantless search: Officer Plummer asserts that Plaintiff consented to the search, and gave him the drugs that were in the apartment. Plaintiff denies this, claiming that Officer Plummer entered the apartment, immediately began looking into cupboards and closets, and only then discovered the pills in the painted box. Plaintiff asserts that the only reason she then found and gave him Gordon's marijuana tray was Defendant's threat to take her child away from her. Unlike a motion to suppress in

a criminal case, in ruling on a civil summary judgment motion the Court may not weigh the testimony nor determine the credibility of the witnesses. Crediting Plaintiff's version of the facts surrounding her alleged consent to the search, which the Court must do at this juncture, the Court cannot conclude as a matter of law that her consent was given freely and voluntarily.

Even if Plaintiff did not freely and voluntarily consent, Officer Plummer also argues that exigent circumstances justified his warrantless search of the apartment. As the Sixth Circuit recently noted:

> [T]he government can overcome the presumption that a warrantless entry is unreasonable if it proves that 'the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment.' *Brigham City v. Stuart*, 126 S. Ct. 1943, 1947, 164 L. Ed. 2d 650 (2006) (citation and quotation marks omitted). The Supreme Court has articulated four situations that may give rise to exigent circumstances: (1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others. *Id.*

<u>United States v. Huffman</u>, 2006 U.S. App. LEXIS 22219; 2006 FED App. 0328P (6th Cir. August 30, 2006) at *11-13.

Here, Officer Plummer contends that "the large amount of marijuana smoke in close proximity to the young child created an exigency which justified the officers' entry." (Doc. 15, Reply Brief at p. 3.) The problem is that Plaintiff and Mr. Gordon, in

his state court testimony, dispute the assertion that there was "a large amount of marijuana smoke" in the apartment. In addition, there is nothing in the record that indicates Officer Plummer was aware of the presence of the child until after he actually entered the living quarters and began the search, at least according to Plaintiff's version of the facts. Even accepting that exigent circumstances might exist if a police officer at the apartment door smelled marijuana smoke and had received a tip that a minor was being given drugs in that apartment (see, e.g., United States v. Cephas, 254 F.3d 488 (4th Cir. 2001)), the Court cannot rule on the credibility of Plaintiff's factual recitation in order to grant judgment to Defendant on this basis. Since the facts are in dispute, summary judgment is improper.

For the same reason, the Court may not grant judgment to Officer Plummer on the basis of qualified immunity. Under Saucier v. Katz, 533 U.S. 194, 200 (2001), qualified immunity analysis is a two-step process. "The first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the question whether the right was clearly established must be considered on a more specific level."

There is a factual dispute over whether Plaintiff's Fourth Amendment right may have been violated by the warrantless search.

The Court must conclude that Defendant's evidence is not so objectively compelling that no reasonable juror could believe Strausburg. This is essentially a credibility battle. Even though Plaintiff has admitted that she suffered no significant damages as a result of the incident, a constitutional violation is itself an actionable injury.

Therefore the Court must deny Defendant's motion for summary judgment on Plaintiff's Section 1983 claim based on the search conducted by Defendant.

3. State Law Claim.

Plaintiff's remaining state law claim in her fourth cause of action alleges that Officer Plummer willfully and intentionally inflicted emotional distress on her by threatening to take her child away from her if she refused to cooperate. In Ohio, intentional infliction of emotional distress requires pleading and proof of outrageous conduct rising to the level of atrocious and utterly intolerable. See, e.g., Springer v. Fitton Center, 2005 Ohio 3624 (Ohio App. 12th Dist. 2005), discussing and applying Yeager v. Local Union 20, 6 Ohio St.3d 369 (Ohio 1983) where the cause of action was first recognized. Yeager adopted language from the Restatement in describing the contours of the tort:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his

> conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'outrageous!'

Id. at 374-375.

While Officer Plummer **may** have exceeded his reasonable scope of authority in conducting the search of Plaintiff's apartment, his actions - even accepting Plaintiff's full recitation of the fact - simply do not lead an average member of our community to exclaim "outrageous."

4. Punitive Damages.

Finally, Plaintiff's complaint seeks punitive damages against Officer Plummer. A plaintiff may recover punitive damages in a Section 1983 case, but only in situations involving reckless or callous indifference to constitutionally protected rights, or conduct that bespeaks evil motives or even intent to harm. See, e.g., Romanski v. Detroit Entertainment LLC, 428 F.3d 629 (6th Cir. 2005), affirming punitive damage award to a senior citizen who, after picking up an abandoned five-cent token from an unoccupied slot machine at Defendant's casino, was surrounded by security officers, held by them in the security office, not

permitted to use the restroom alone, forcibly escorted outside, and prohibited from having lunch with her friends, who were in the casino and who were told that the plaintiff had stolen money from the casino.

In claims against police officers, punitive damage awards have been affirmed in situations involving excessive or unreasonable physical force used by the officer. See, e.g., Koehler v. Smith, 1997 U.S. App. LEXIS 27071 (6th Cir., September 25, 1997) at *19 [plaintiff was a paraplegic ". . . whom the police yanked out of his car, dropped on the ground several times, dragged around by his forearms and kicked and kneed in the head."] And in a claim by an incarcerated plaintiff, the Sixth Circuit found that a prison official's deliberate indifference to the prisoner's need to have daily anti-tubercluosis medication justified an award of punitive damages. See Hill v. Marshall, 962 F.2d 1209, 1217 (6th Cir. 1992), noting that punitive damages may be awarded in a §1983 case "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." (internal citation omitted.)

Here, accepting Plaintiff's recitation of the facts of Officer Plummer's conduct, there is simply a lack of evidence of any evil motive or intent, or of reckless or callous indifference to Plaintiff's constitutional rights. As noted above, Plaintiff

freely admitted that Officer Plummer did not raise his voice to her, did not touch her or her child, did not damage anything in her home, and took only the illicit drugs with him when he left. As a matter of law, such conduct cannot support an award of punitive damages against Officer Plummer.

**CONCLUSION**

For all of the foregoing reasons, the Court denies Defendant's motion for summary judgment on Plaintiff's claim under 42 U.S.C. §1983, based solely on Plaintiff's claim that Officer Plummer's search of her apartment was without consent. The Court grants Defendant's motion on Plaintiff's §1983 claim based on the verbal threats Plaintiff alleges were made to her. The Court grants Defendant's motion on Plaintiff's state law claim for intentional infliction of emotional distress. The Court grants Defendant's motion as to Plaintiff's claim for punitive damages. The Court also grants judgment to the City of Waynesville.

SO ORDERED.

DATED: October 12, 2006

s/Sandra S. Beckwith
Sandra S. Beckwith, Chief Judge
United States District Court